IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARY GILES and HENRY STEPHENS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 13-00020-N |
| | ) |
| WINN-DIXIE MONTGOMERY, LLC, | ) |
| | ) |
| Defendant. | ) |

ORDER

This action is before the Court on a motion for summary judgment (doc. 29-32) filed by the defendant, Winn-Dixie Montgomery, LLC ("Winn-Dixie"). Pursuant to the consent of the parties (doc. 8), this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *See* Doc. 10. Upon consideration of the motion, plaintiff's response in opposition thereto (doc. 34-35), Winn Dixie's reply (docs. 36-37), and all other pertinent portions of the record, the undersigned concludes that the motion is due to be **granted**.

BACKGROUND

In this action, plaintiffs allege that on December 22, 2010, they went shopping for groceries at Winn Dixie store number 580 in Theodore Alabama, during the course of which Mary Giles "slipped in an unknown substance and fell to the floor." (Doc. 1-1 at p. 2, ¶¶ 7-8). Plaintiffs filed this action in the Circuit Court of Mobile County seeking damages for the alleged serious injuries caused

by the fall. (*Id*.) The Complaint contains counts for negligence and wantonness on behalf of Giles, as well as a count for loss of consortium on behalf of her husband, Henry Stephens. (*Id*.) Winn-Dixie removed the action to this Court on January 17, 2013, pursuant to 28 U.S.C. §§ 1332(a) and 1441(b), which permits a defendant to remove a case to federal court where there is diversity of citizenship and the amount in controversy exceeds $75,000.00. (Doc. 1 at pp. 2-3, ¶¶ 5-7). Winn-Dixie simultaneously filed its Answer on January 17, 2013 (Doc. 2). Following the close of discovery, Winn Dixie filed the present motion for summary judgment on October 21, 2013. (Docs. 29-32). Plaintiffs' response in opposition was filed on November 22, 2013. (Doc. 34). Winn-Dixie filed a reply on November 256, 2013 (Doc. 36). The issues have been fully briefed and are ripe for adjudication.

## FINDINGS OF FACT[1]

Upon consideration of the parties' respective arguments and the evidence of record, both testamentary and documentary, the undersigned finds the following facts to be undisputed in this case:

1. On December 22, 2010, Plaintiff Mary Giles "slipped in an unknown substance and fell to the floor" at Winn Dixie store number 580 in Theodore, Alabama. (Doc. 1-1 at ¶¶ 7-8). The fall occurred on the store's "drink aisle −

---

[1] As it is required to do, the Court construes the facts in the light most favorable to the nonmoving party.

Aisle 17. Plaintiff Henry Stephens accompanied Giles to Winn Dixie, however, he remained at the checkout counter (Checkout Register # 5), when Giles returned to the drink aisle and subsequently fell.

    2.    The following sequence of events set forth by the defendant, Winn-Dixie Montgomery, LLC ("Winn-Dixie"), have not been challenged or disputed by the plaintiffs:

> Plaintiffs [Mary] Giles and [Henry] Stephens arrived at the store at 3:38 p.m. (Exh. A [doc. 31-1], Declaration of Jeremy McPherson, ¶ 4). They shopped approximately 20 minutes before heading down the "drink aisle," which was Aisle 17. (*Id.*). They actually walked down the drink aisle at 3:59 p.m.. (*Id.*; Exh. B [doc. 31-2], Dep. Of H. Stephens, at pp. 21:14-19 and 22:10-13). On this first trip down the drink aisle, they did not slip, and they also did not observe any foreign substance on the floor. (Exh. B [doc. 31-2], at pp. 21-14-19; 28:14-29:3). They then proceeded to the checkout line approximately four minutes later at 4:03 p.m. (Exh. A [doc. 31-1], ¶ 4). While in the checkout line, Plaintiff Giles decided to return to the drink aisle to get two more 12-packs of drinks at 4:05 p.m. (*Id.*; Exh. B [doc. 31-2], at p. 22:1-9; Exh. C [doc. 31-3], Dep. of M. Giles, at pp. 27:5-28:5). Giles picked up the two twelve packs of drinks and, after turning around to return back to the checkout line, she fell on the drink aisle. (Exh. C [doc. 31-3], at pp. 41:19-42:3). The store manager was notified of the fall and went to the scene at 4:07 p.m. (Exh. A [doc. 31-1], ¶ 4).

(Doc. 32 at ¶ 3, footnotes omitted).

    3.    Giles testified that she never saw anything on the floor of the drink aisle (Aisle 17) before she fell. (Doc. 31-3 at p. 35:15-17). After the fall, the only substance she observed was a "clear" liquid. (*Id.*, at p. 34:1-10). She could not recall if it was in a single puddle or if there were droplets, and she also cannot recall if there were any streaks through the substance. (*Id.*, at p. 34:11-35:3).

Giles did not know where this clear liquid came from, and has no idea how it got on the floor, or how long it had been on the floor. (*Id*., at p. 35:4-14). Giles agreed that this clear liquid she saw after the fall could have been Sprite. (*Id*., at pp. 35:18-36:12). During the fall, Giles actually dropped a 12-pack of Sprite, and the box burst open. (*Id*., at p. 35:18-23). Stephens confirmed that, when he arrived on the scene, a few Sprite cans had burst open when Giles fell, they were spraying in the air, and the liquid they saw on the floor could have been the same Sprite that burst when Giles fell. (Exh. B, at pp. 30:17-33:10).

  4. Until September 2013, Plaintiffs "believed that Mary Giles had slipped in a liquid that had been spilled on the floor of aisle 17 of Defendant's store." (Doc. 34 at pp. 1-2). They now contend, based solely on their review of the store's surveillance videos, that Giles "unknowingly stood in [] water for approximately two minutes" at Cash Register Number 5's checkout lane and then walked to aisle 17 "where the water on her shoes caused her to slip and fall." (*Id*. at p. 2).[2] They contend that the water was left by an employee of Winn-Dixie

---

[2] Plaintiffs offer the following "several explanations" for their contention that "Giles could stand in water and then walk 127 feet before slipping and falling":

> There ***could have been*** water in the crevices on the soles of Giles' shoes that did not touch the floor until she picked up the two twelve packs of drinks, adding extra weight on the shoes. Giles' shoe soles ***could have*** acted like sponges, soaking up the water that the Winn Dixie employee left on the floor and the extra weight of the two twelve packs of drinks ***could have*** squeezed the water out, much like squeezing water out of a sponge. When Giles was walking the 127 feet to the drink aisle, she was not standing in one place where the water from her shoes could accumulate but while picking up the two twelve packs, water ***could have accumulated*** in a puddle where she was standing, causing her to slip when she turned to head back to the register. Finally, when Giles was walking the 127 feet to the drink aisle, she was not making any sudden turns but, after getting the drinks, she turned to head back to the register and fell while turning.

who mopped the floor at Cash Register Number 5 at 3:59 p.m. The video shows the employee drying the lane with paper towels at 4:01 p.m., and then leaving with the mop prior to plaintiffs entering the checkout lane at 4:03 p.m. Stephens, followed by the shopping cart, and then Giles, entered Cash Register Lane 5 behind another customer who entered Lane 5 immediately after the floor was mopped and dried. *Id*. at ¶¶ 1-2; *see also* Doc. 31-1 at pp. 11-16, 21; and p. 6 (Exh 2).

     5.     Prior to the time that Giles and Stephens entered the lane for Cash Register Number 5, the store manager, Jeremy McPherson, asked an employee to get a damp mop to remove some light black marks from the floor of that lane. (Doc. 31-1 at ¶ 9). The employee closed off the lane, mopped the floor, dried it with paper towels, and then re-opened the lane. (*Id*.). Plaintiffs maintain that Winn-Dixie's surveillance videos "shows that a Winn Dixie employee left mop water on the floor at cash register number 5" (doc. 34 at ¶ 1).

     6.     Giles acknowledges that the distance between Cash Register Number 5 and Aisle 17 where she fell is 127 feet. (Doc. 31-1 at ¶ 11; *see also*, Doc. 31-1 at p. 22). Plaintiffs do not contend that the floor surface material varied in any manner in the 127 feet at issue.

---

(Doc. 34 at 5-6, emphasis added). In contrast, Winn-Dixie submits evidence that Giles was wearing pink crocs, which do not have "sponge-like" soles that would soak up water. (Doc. 31-3 at p. 42:20-25). Evidence of record also establishes that Giles made a similar "turn" at the register to return to aisle 17 as she allegedly made at aisle 17 to return to the cash register. (Doc. 31-1 at 6 (Store Video), and Doc. 37-2 at 1-3).

7. Giles testified that the shoes she wore that day were pink crocs. (Doc. 33-3 at p. 8:20-25). Plaintiffs contend, *inter alia*, that water from the floor at Cash Register Number 5 "could have been" trapped in the crevices of Giles' shoes and transported 127 feet away to Aisle 17 where she fell. (Doc. 34 at 5; *see also* n.2, *supra*).

CONCLUSIONS OF LAW

A. Summary Judgment Standard.

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.*

"In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "In determining whether genuine issues of material fact exist, we resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party." Gonzalez v. Lee County Housing Authority, 161 F.3d 1290, 1294 (11th Cir. 1998), *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). Also, "what is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996).

"A district court should grant summary judgment when, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004), *citing* Nolen v. Boca Raton Community Hosp., Inc., 373 F.3d 1151, 1154 (11th Cir. 2004)(internal quotations omitted). Overall, the Court must "resolve all issues of material fact in favor of the plaintiff, and then determine the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts." McDowell, 392 F.3d at 1288, *citing* Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003). "If the evidence could not lead a rational fact-finder to find for the nonmoving party, and where the nonmoving party fails to make a sufficient showing to demonstrate an element essential to that party's case, on which that party bears the burden of proof at trial, then no genuine of issue material fact exists, and summary judgment should be granted." *Id*. at 1288-1289, *citing* Celotex, 477 U.S. at 322-23. "[G]enuine disputes are 'those in which the evidence is such that a reasonable jury could return a verdict for the non-movant [and,] [f]or factual issues to be considered genuine, they must have a real basis in the record.'" *Id*. at 1289, *quoting* Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996).

B.  Premise Owner Liability.

The law applicable to this case has been clearly stated by the Alabama Supreme Court as follows:

> In this premises-liability case, the elements of negligence " 'are the same as those in any tort litigation: duty, breach of duty, cause in fact, proximate or legal cause, and damages.' " E.R. Squibb & Sons, Inc. v. Cox, 477 So.2d 963, 969 (Ala.1985) (*quoting* David G. Epstein, Products Liability: Defenses Based on Plaintiff's Conduct, 1968 Utah L.Rev. 267, 270). "The owner of a premises ... is not an insurer of the safety of his invitees[], and the principle of *res ipsa loquitur* is not applicable. There is no presumption of negligence which arises from the mere fact of an injury to an invitee." Tice v. Tice, 361 So.2d 1051, 1052 (Ala.1978). In order to overcome a defendant's properly supported summary-judgment motion, the ***plaintiff bears the burden of presenting substantial evidence as to each disputed element of her claim***. *See* Ex parte Atmore Community Hosp., 719 So.2d 1190 (Ala.1998); Mann v. Bank of Tallassee, 694 So.2d 1375 (Ala. Civ. App., 1996).

Ex parte Harold L. Martin Distributing Co., Inc., 769 So.2d 313, 314 (Ala. 2000) (emphasis added). The Alabama Supreme Court held that the injured party in Martin Distributing had "failed to produce substantial evidence as to the cause in fact of her accident." *See also* Hose v. Winn-Dixie Montgomery, Inc., 658 So. 2d 403, 404 (Ala. 1995)("Mere conclusory allegations or speculation that a fact exists will not defeat a properly supported motion for summary judgment."); Vargo v. Warehouse Groceries Management, 529 So.2d 986, 986 (Ala. 1988)(" "No presumption of negligence arises from the mere fact of injury to a customer.").

In East v. Wal-Mart Stores, Inc., the Alabama Supreme Court also discussed, in the context of a motion for summary judgment, the applicable law in "slip and fall" cases and held:

> "[A] storekeeper is under a duty to exercise reasonable care to provide and maintain reasonably safe premises for the use of his customers. However, the storekeeper is not an insurer of the customer's safety, and is liable for injury only if he negligently fails to use reasonable care in maintaining his premises in a reasonably

safe condition. The plaintiffs must prove that the injury was proximately caused by the negligence of [the storekeeper] or one of its servants or employees. ***Actual or constructive notice of the presence of the substance must be proven before [the storekeeper] can be held responsible for the injury.*** Furthermore, the plaintiffs must prove (1) that the substance slipped upon had been on the floor a sufficient length of time to impute constructive notice to [the storekeeper]; or (2) that [the storekeeper] had actual notice that the substance was on the floor; or (3) that [the storekeeper] was delinquent in not discovering and removing the substance."

East v. Wal-Mart Stores, Inc., 577 So.2d 459, 460-61 (Ala. 1991)(emphasis added). *See also*, Lowe's Home Centers, Inc. v. Laxson, 655 So. 2d 943, 946 (Ala. 1994)("Not every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from someone. Thousands of accidents occur every day for which no one is liable in damages, and often no one is to blame, not even the ones who are injured.").

In Wal-Mart Stores, Inc. v. Irby, the Alabama Court of Civil Appeals reiterated that the plaintiff in a slip and fall case must prove:

> " '(a) that the foreign substance slipped upon was on the floor a sufficient length of time to impute constructive notice to the defendant, or (b) that the defendant had actual notice of the substance's presence on the floor, or (c) that the defendant was delinquent in not discovering and removing the foreign substance. In the absence of such proof, the plaintiff has not made out a prima facie case that the defendant was negligent in the maintenance of its floors. S.H. Kress & Co. v. Thompson, 267 Ala. 566, 103 So.2d 171 (1957).' "

Wal-Mart Stores, Inc. v. Irby, 806 So.2d 1242, 1245 (Ala.Civ.App. 2000), quoting Winn-Dixie Store No. 1501 v. Brown, 394 So.2d 49, 50 (Ala.Civ.App.1981).

    C.    <u>Wantonness</u>.

"The Alabama Code defines 'wantonness' as '[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others'." Allen v. Con-Way Truckload, Inc., 2012 WL 3775735, *3 (N.D. Ala., August 23, 2012), *quoting* § 6–11–20(b)(3), Ala.Code 1975. Wantonness requires the "conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Id*., *quoting* Clark v. Kindley, 10 So.3d 1005, 1008 (Ala.Civ.App. 2007) (*quoting* Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1256 (Ala. 1998). *See also* Serio v. Merrell, Inc., 941 So.2d 960, 966–967 (Ala. 2006).

"In a negligence action the plaintiff must prove (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or injury; and (4) that the defendant's breach was the actual and proximate cause of the plaintiff's loss or injury." QORE, Inc. v. Bradford Bldg. Co., 25 So.3d 1116, 1123 (Ala. 2009), *citing* DiBiasi v. Joe Wheeler Elec. Membership Corp., 988 So.2d 454, 460 (Ala. 2008)(*citing* Ford Motor Co. v. Burdeshaw, 661 So.2d 236, 238 (Ala.1995)). As compared with simple negligence, the Alabama Supreme Court has repeatedly stated:

> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury....
>
> Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas

11

> wantonness is characterized as ... a conscious ... act. "Simple negligence is the inadvertent omission of duty; and wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted." McNeil v. Munson S.S. Lines, 184 Ala. 420, [423], 63 So. 992 (1913)....

*Id.* at *3-4, *quoting* Ex parte Essary, 992 So.2d 5, 9–10 (Ala. 2007)(*quoting* Tolbert v. Tolbert, 903 So.2d 103, 114–15 (Ala. 2004)(emphasis omitted). *See also*, Proctor v. Classic Automotive, Inc., 20 So.3d 1281, 1287 (Ala.Civ.App. 2009)( "To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to consequences, consciously and intentionally did a wrongful act or omitted a known duty [and] that act or omission must proximately cause the injury of which the plaintiff complains.").

D. Analysis.

In the present case, Winn Dixie has satisfied its burden to inform the Court of "the basis for its motion, and identif[ied] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark, 929 F.2d at 608, *quoting* Celotex, 477 U.S. at 323. The burden shifts, therefore, to the plaintiffs to show the existence of a genuine issue of material fact. *Id.*

Plaintiffs, in response, acknowledge that they "must prove actual or constructive notice of a dangerous condition" in order to succeed in holding Winn-Dixie liable for breaching a duty to maintain a reasonably safe premises for use by Giles. (Doc. 34 at p. 3). Plaintiffs have expressly abandoned their initial theory

that Giles "slipped in a substance that had been left on the floor of aisle 17" and now assert as their sole theory that "the hazard that caused the fall actually was mop water on the floor at checkout number 5." (*Id*. at 1-4). Plaintiffs argue that the store's surveillance video is evidence that Winn-Dixie had actual notice "because its employee created the dangerous condition." (*Id*.)

There is no evidence in the record, however, either testamentary or documentary, which establishes that any water existed on the floor after it was mopped and dried by the employee prior to plaintiffs' arrival at Cash Register Number 5. Moreover, neither Giles nor Stephens testified that they ever saw any water or other liquid on the floor at Cash Register Number 5. The surveillance videos entered into evidence do not show anything on that floor at the time in question.[3] Nor do the videos establish that the employee ever set the mop down on the floor where Giles stood behind Stephens at Cash Register Number 5, or that the mop was so wet that the floor could not be completely dried by the method used by the employee.[4]

---

[3] The undersigned has reviewed the subject video and finds that it does not establish the presence of any water on the floor at that location and time.

[4] Plaintiffs contend that the employee who mopped the floor at Cash Register Number 5 "did not use warning signs, did not dry the floor after placing a wet mop on the floor, and did not inspect the floor before leaving the area with his mop." (Doc. 34 at p. 7). Plaintiffs further contended that the video "shows . . . the employee resting the wet mop on the floor at the entrance to register 5" before leaving the area. (*Id.* at p. 2). Although the video does show the employee holding the mop against the magazines at the end of the cash register conveyor belt, it does not show that the mop was touching the floor or that it was dripping any water or other liquid from its threads. There is no evidence in this record to establish with any degree of certainty how wet this mop was at the time in question. In view of the lack of evidence that any water remained on the floor at Cash Register Number 5 after the employee mopped and dried it, the only logical inference that can be made from the evidence is that the mop was merely damp and certainly was not dripping. In addition, plaintiffs do not refute Winn-Dixie's contention that the employee

13

Plaintiffs speculate that Giles' shoes could have acted as a sponge or held water in their crevices but have proffered no proof to support this theory. *See,* Johnson v. State Farm Fire & Cas. Co., 2013 WL 4607548, *11 (S.D. Ala. 2013)(*citing* Fed. R. Evid. 701(c)(stating that lay witness opinion must "not be based on scientific, technical, or specialized knowledge within the scope of Rule 702"). Plaintiffs' contention that they need not provide expert testimony on this point is without merit. A jury is not permitted to speculate about unsupported theories, no matter how attractive they may seem on the surface. *See* McCarroll v. Wal-Mart Stores, Inc., 2012 WL 1659179, *2 (S.D. Ala. May 11, 2012)("[I]f the plaintiff's evidence 'amounts to little more than speculation or conjecture as to the nature of the substance on the floor, as to the length of time the substance was on the floor, and as to whether the defendants were delinquent in not discovering the substance and cleaning it up,' then 'the defendants [are] entitled to a summary judgment'.")(*quoting*, Speer v. Pin Palace Bowling Alley, 599 So.2d 1140, 1143–1144 (Ala.1992)); *see also* Logan v. Winn–Dixie Atlanta, Inc., 594 So.2d 83, 84-85 (Ala.1992) (Held that the plaintiff's evidence presented to show that her injuries were the result of the negligence of the defendants afforded nothing more than speculation, conjecture, or guess and was wholly insufficient to warrant submitting the case to the jury).

---

held the mop in an indented "nook" area at the head of the checkout lane. *See* Doc. 31-1 at 16-21. There is no evidence on the videos that Giles ever stepped into that "nook" area. *Id*.

The law is well established that "the principle of *res ipsa loquitur* is not applicable [and] [t]here is no presumption of negligence which arises from the mere fact of an injury to an invitee." Martin Distributing, 769 So.2d at 314, *quoting* Tice, 361 So.2d at 1052. Nor can plaintiffs merely suppose that, because a floor was mopped at 3:59 p.m. (doc. 31-1 at 14), it remained sufficiently wet at 4:03 p.m. (doc. 31-1 at 7) to cause a customer to slip and fall 127 feet away, despite being dried with paper towels at 4:01 p.m. (doc. 31-1 at 15) and there being no evidence of any water or other liquid on the surface of the floor at the time of the fall. There is simply no evidence that the conduct of the employee at the Cash Register Number 5 checkout lane left any residue on the floor that could have constituted the cause for Giles' fall on aisle 17.

In the final analysis, the evidence of record in this case could not lead a rational fact-finder to find for the plaintiffs. Plaintiffs have failed to make a sufficient showing to demonstrate an element essential to their case, an element on which they bear the burden of proof at trial. Consequently, the undersigned finds that no genuine of issue material fact exists and Winn-Dixie is entitled to summary judgment.[5] Specifically, plaintiffs have failed to establish that the defendant had either actual or constructive notice of a dangerous condition that caused Giles to fall. Winn-Dixie is, therefore, neither liable to Giles nor liable to Stephens on his derivative claims of loss of consortium.

---

[5] In view of the lack of evidence that the employee who mopped and dried the floor at cash register number 5 left any water residue in which Giles could have stood on December 22, 2010, there is no need to discuss the lack of evidence concerning Winn-Dixie's alleged failure to train its employees in proper floor maintenance and plaintiffs' claim for wantonness.

15

CONCLUSION

For the reasons stated above, the Court concludes and it is therefore **ORDERED** that defendant's motion for summary judgment is hereby **GRANTED** and judgment is to be entered in favor of the defendant, Winn-Dixie Montgomery, LLC, and against the plaintiffs, Mary Giles and Henry Stephens, the plaintiffs to have and recover nothing against the defendant. Costs are taxed against the plaintiffs.[6]

    **DONE** this 23rd day of January, 2014.

                                      /s/ Katherine P. Nelson
                                      **KATHERINE P. NELSON**
                                      **UNITED STATES MAGISTRATE JUDGE**

---

[6] In light of this ruling, the February 13, 2014 Final Pretrial Conference is **CANCELLED.**